IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32271-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COREY D. FAWVER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Corey Fawver challenges his convictions for first degree burglary
and second degree assault, alleging both that his counsel's performance was flawed and
the evidence did not support the assault conviction. We disagree and affirm.

FACTS

The incident in question arose after Mr. Fawver was forcefully thrown out of a
New Year's Party at the residence of Christopher Pierce in Deer Park. Pierce punched
and pushed Fawver out of the event in the early hours of January 1, 2013. Fawver left on
foot and texted a friend that he had been "jumped" at the party.

Three friends arrived in a truck to pick up Fawver; they were followed in another
car by two other men. The six men drove in the two vehicles back to Pierce's residence,
arriving around 3:00 a.m. Several of the men, armed with baseball bats, entered the

residence and a melee ensued. Many of the partygoers fought back against the invaders. Two of them identified Fawver as being among the group wielding baseball bats.

Pierce eventually was discovered outside, bleeding from head and face injuries. Among his injuries, he was discovered to have subdural hematomas and star-shaped skull fracture consistent with a blunt force injury. Pierce, who did not want to cooperate with investigators, was found to have a blood alcohol level of .17. Fawver, who was interviewed by police three months after the incident, told them that he also had been very intoxicated that evening.

Mr. Fawver and another man eventually were jointly charged with first degree burglary and second degree assault; each charge also was alleged to have been committed with a deadly weapon other than a firearm. The charging theory on the assault count was that the two men had assaulted Pierce "with a deadly weapon, to-wit: a baseball bat." Clerk's Papers (CP) at 1-2. Mr. Fawver's matter proceeded to a separate jury trial without the co-defendant.

Detective Michael Drapeau testified that he "screen grabbed" images from the Facebook page of Mr. Corey Fawver. One posting, shared with the jury, was from January 1, 2013. Mr. Fawver's name and picture accompanied the post. The post was admitted as an exhibit without objection. It read: "Wow What a fun Night ppl [people] in dp [Deer Park] are not bad as they think they are." Exhibit 1, *see* Report of Proceedings (RP) at 140.

2

The defense presented evidence that Mr. Fawver had not wanted to return to the scene with his friends and had not wielded a weapon. Mr. Fawver did not testify. Defense counsel argued the case to the jury on a theory that his client reluctantly had been present but had not taken part in the fight. The jury was instructed, in relevant part, that to convict Mr. Fawver of second degree assault, it had to find beyond a reasonable doubt that he "assaulted Christopher Pierce with a deadly weapon." CP at 63. The jury also was instructed on the definition of a "deadly weapon" and on accomplice liability. CP at 67, 69.

The jury convicted Mr. Fawver on both counts and also concluded that the crimes were committed with a deadly weapon. Given Mr. Pierce's active participation in the offense, the court imposed an exceptional sentence below the standard range of 3 months to be served consecutively to the 36 months required by the deadly weapon enhancements. Mr. Fawver then timely appealed to this court. The State did not cross appeal the exceptional sentence.

## ANALYSIS

Mr. Fawver's appeal challenges both his counsel's performance and the evidence supporting the assault conviction. We address the two issues in the order noted.

*Ineffective Assistance of Counsel*

Mr. Fawver first alleges that his trial counsel performed ineffectively by not objecting to the Facebook post and by not seeking an intoxication instruction. He fails to establish any error by his counsel.

The standards governing this argument have been settled for a generation. The United States Constitution Sixth Amendment guarantee of the right to counsel requires more than the mere presence of an attorney. The attorney must perform to the standards of the profession. Counsel's failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance, the defendant must show both that his counsel erred and that the error was so significant, in light of the entire trial record, that it deprived him of a fair trial. *Id.* at 690-92. If the defendant fails to establish one of the *Strickland* prongs, the other need not be reviewed. *Id.* at 697.

Mr. Fawver's initial challenge to counsel's performance takes issue with the failure to object to Exhibit 1, the Facebook posting. He contends that it was not properly authenticated. The premise of this argument is questionable. There are at least as many ways to try a case as there are trial attorneys. Skilled counsel often do not raise objections

4

to the form in which otherwise admissible evidence is entered. In most instances, it will be nigh impossible to establish that counsel erred by failing to make an objection that, if successfully lodged, would simply require the opposing party to offer the evidence in a different manner. That is the situation here. Mr. Fawver does not argue that the posting could never be authenticated; he only argues that this authentication was inadequate. Under the circumstances, it is doubtful that counsel's decision to not object was such an egregious decision that it constitutes a failure to live up to the standards of the profession.

Nonetheless, even if this type of behavior could constitute error under *Strickland*, it does not do so here. Mr. Fawver has identified no Washington authority, nor have we, that sets forth authentication requirements for Facebook postings. On that basis alone, it is difficult to conclude that counsel erred since there is no governing authority to establish a failure to adhere to professional norms. We also reach the same result by consideration of the rule. ER 901 provides:

> **(a) General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
>
> **(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Rule:
>
> (1) *Testimony of Witness with Knowledge.* Testimony that a matter is what it is claimed to be.
>
> . . .
>
> (4) *Distinctive Characteristics and the Like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

. . .

(10) *Electronic Mail (E-mail).* Testimony by a person with knowledge that (i) the email purports to be authored or created by the particular sender or the sender's agent; (ii) the email purports to be sent from an e-mail address associated with the particular sender or the sender's agent; and (iii) the appearance, contents, substance, internal patterns, or other distinctive characteristics of the e-mail, taken in conjunction with the circumstances, are sufficient to support a finding that the e-mail in question is what the proponent claims.

In the present case the Facebook "screen-grab"[1] was offered by the State. Detective Drapeau testified that he found the post of Mr. Fawver's Facebook page after Mr. Pierce provided a tip that the post existed. Accompanying the post was the name "Corey Fawver" and a picture identified by Detective Drapeau of Mr. Fawver. Christy Fair, a friend of Mr. Fawver, testified that she recognized the page containing the post as Mr. Fawver's Facebook page.

Detective Drapeau testified that the post was posted on January 1, 2013. Additionally, the post read—in essence—Wow, what a fun night. People in Deer Park are not as bad as they think they are. Given the unique comment posted so close in time to the assault, the fact that a friend of Mr. Fawver recognized it as his Facebook page, the name on the post matched Mr. Corey Fawver's name, the picture was identified as the picture of Mr. Fawver, and the fact that Facebook is widely known to generally be

---

[1] A "screen-grab" is a digital photographic capture of what one computer was displaying at the time.

password protected, the Facebook post appears to have been properly authenticated. At a minimum, we cannot say that counsel erred in failing to object to the exhibit.

Mr. Fawver also faults counsel for not pursuing an intoxication instruction. It does not appear that there was a factual basis for the instruction. It also would have been contrary to the defense theory of the case.

By statute, Washington recognizes an intoxication defense. RCW 9A.16.090. The statute recognizes that whenever a crime has a "particular mental state," voluntary intoxication "may be taken into consideration in determining such mental state." *Id.* The instruction addressing this statute is found in 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 18.10, at 282 (3d ed. 2008). A criminal defendant has a right to have the jury instructed on a defense that is supported by substantial evidence. *State v. Powell*, 150 Wn. App. 139, 154, 206 P.3d 703 (2009). To receive a voluntary intoxication instruction regarding alcohol, a defendant must show "(1) the crime charged has as an element a particular mental state, (2) there is substantial evidence of drinking, and (3) the defendant presents evidence that the drinking affected [the defendant's] ability to acquire the required mental state." *State v. Everybodytalksabout*, 145 Wn.2d 456, 479, 39 P.3d 294 (2002).

Mr. Fawver's argument founders on the third prong of the test.[2] While both the assault and burglary charges required intentional conduct, there is absolutely no evidence presented that Mr. Fawver's intoxication prevented him from acting intentionally. Indeed, the evidence presented—that he left the party and contacted his friends for a ride, then resisted their desire to return him to the party—showed purposeful, intentional conduct. This was not the behavior of an unthinking man or one whose ability to reason was diminished. This evidence was quite the contrary.

Accordingly, counsel understandably did not pursue an intoxication instruction under these facts—there was no basis for giving the instruction. Moreover, as counsel tried the case, it appears that the decision not to seek the instruction was a tactical one. Defense counsel spent much of his closing argument attacking the testimony of the State's witnesses from the party—particularly the ones who painted his client as an active participant in the melee—as unreliable due to their intoxication. An intoxication instruction would simply have tarred his client with the same brush and undermined the defense theory of the case. For both reasons, we conclude that Mr. Fawver has not established that his counsel erred by not seeking the intoxication instruction.

---

[2] It is debatable whether there was substantial evidence of Mr. Fawver's drinking. There was ample evidence that most of the partygoers had consumed alcohol in substantial quantities, but the only evidence that Mr. Fawver did so were his statements three months after the incident in which he claimed to have limited recall of events due to drinking.

Neither of Mr. Fawver's contentions meet his heavy burden of establishing that counsel failed to live up the standards of the profession. At most he has suggested that there were different approaches to trying this case—something that can be said of any trial. As he has not established error by his attorney, we need not consider whether he suffered prejudice from the alleged errors.

The ineffective assistance argument is without merit.

*Sufficiency of the Evidence*

Mr. Fawver also contends that the evidence was insufficient to support the assault conviction. He contends that the jury did not find that he assaulted Mr. Pierce with a baseball bat as alleged in the charging document. His argument confuses the law of the case doctrine as applied to this challenge.

Properly understood, the standards governing sufficiency of the evidence review are also well settled. We review such challenges to see if there was evidence from which the trier of fact could find each element of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id.* If the State undertakes to prove a specific fact by way of the elements instruction, the evidence also must support that factual determination even if the fact is not an element of the offense. *State v.*

9

*Hickman*, 135 Wn.2d 97, 101-05, 954 P.2d 900 (1998). This is a specific application of the law of the case doctrine. *Id.*

Mr. Fawver argues that the evidence is insufficient because the jury did not find that Mr. Pierce was assaulted with a baseball bat. However, since the court did not ask the jury to find that Mr. Fawver (or his accomplice) assaulted Mr. Pierce with a baseball bat, the *Hickman* application of the law of the case doctrine is inapplicable here. The State did not undertake to prove an extraneous element.

Mr. Fawver cites no relevant authority to support his argument that the State must prove every fact alleged in the charging document. The purpose of a charging document is to provide notice to the defendant of the charge against him and its factual basis. *State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987). "Jury instructions and charging documents serve different functions." *State v. Vangerpen*, 125 Wn.2d 782, 788, 888 P.2d 1177 (1995). The charging document is not a concern for the jury. Its primary purpose is to alert the defendant to the charge and underlying conduct at issue. *Pelkey*, 109 Wn.2d at 491. From the jury's perspective, the case is contained in the elements instruction and any accompanying definitional instructions.

Since the weapon was not specified in the elements instruction, the State had no need to prove that extraneous element. Instead, our review need only assess the evidence that Mr. Pierce was assaulted with a deadly weapon. The evidence did support that determination. Partygoers testified that Mr. Fawver's friends showed up armed with

10

No. 32271-8-III
*State v. Fawver*

baseball bats and at least two witnesses recalled Mr. Fawver himself with a baseball bat. Mr. Pierce was found laying outside of his home after the attack. He had sustained a skull fracture from a blunt force strike. That evidence supported the jury's determination that Mr. Fawver or an associate took a baseball bat to Mr. Pierce's head, thus assaulting him with a deadly weapon. The evidence was sufficient.

The convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

11